\*E-Filed 11/1/12\*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD EARL GEORGE, | No. C 11-0876 RS (PR) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**; |
| v. | |
| R. REYNOSO, et al., | **ORDER REFERRING ACTION TO JUDGE VADAS** |
| Defendants. | |

**INTRODUCTION**

Plaintiff alleges in this federal civil rights action that defendants, his jailors at Salinas Valley State Prison ("SVSP"), (1) assaulted him in violation of the Eighth Amendment and (2) failed to process his inmate grievance in violation of due process. Defendants move for summary judgment. For the reasons stated herein, defendants' motion for summary judgment is GRANTED with respect to plaintiff's due process claim, GRANTED with respect to some Eighth Amendment claims, and DENIED with respect to others.

## BACKGROUND

The following facts are undisputed unless specifically noted otherwise. Plaintiff's due process and cruel and unusual punishment claims arise from an incident that took place on November 1, 2010 at SVSP in Section B of Building C-3. On that day, Officers Reynoso and Tapia escorted plaintiff from the recreational yard toward his cell in C-3. Upon entering C-3, a physical altercation ensued between Reynoso, Tapia and plaintiff, during which plaintiff sustained lacerations on his face and elbow. (Defs.' Mots. to Dismiss & for Summ. J. ("MSJ") at 11.) Following a prison disciplinary hearing on charges arising from the altercation, plaintiff was found guilty of "Willfully Resisting a Peace Officer," and assessed 90 days forfeiture of behavior credits. (*Id.* at 12.) Plaintiff alleges that (1) defendants Reynoso and Tapia used excessive force, inflicting pain and injury; (2) defendants Colburn, Lizarraga, Sanchez, Woolf, and Xiong witnessed the use of excessive force but failed to intervene; (3) defendants Anthony Hedgpeth, Ponder, Monroy, and Fritz are liable as supervisors; and (4) defendant Smith, the Inmate Appeals Coordinator, violated plaintiff's right to due process by mishandling the grievances he filed regarding the altercation.

## DISCUSSION

### I. Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively

demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

**II.     Eighth Amendment**

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton. *Id.* (citing *Wilson*, 501 U.S. at 297); *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for

the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

### 1. Reynoso and Tapia

Plaintiff asserts that Reynoso and Tapia used excessive force in violation of the Eighth Amendment. He alleges that he complied with orders from all correctional officers, did not say a word, and made no sudden movements while being escorted back to his cell. (Pl. Am. Compl. ("Compl.") at 5.) Reynoso, according to plaintiff, verbally attacked plaintiff with "disrespectful language." (*Id.*) When plaintiff did not react to these verbal attacks, he alleges that Reynoso grabbed the back of his neck and forced his face "into the concrete wall," the force of the impact caused him to lose consciousness. (*Id.*) When plaintiff regained consciousness, he was lying on the ground and was "being kicked in the face, head, chest, ribs, back, and arms" while Reynoso and Tapia applied mechanical restraints. (*Id.*) Plaintiff's factual allegations present a situation in which a state prisoner was the victim of an unprovoked and unnecessary beating resulting in significant pain and bodily injury.

Defendants dispute plaintiff's version of events. They claim plaintiff failed to comply with repeated verbal orders from Reynoso and Tapia immediately prior to the physical altercation, and that they employed the "minimum force necessary" to maintain control of him. (MSJ at 18.) Defendants further assert that plaintiff failed to comply with recreational yard-release procedures by attempting to by-pass a standardized metal detector search, argued with officers about the search process, and generally appeared agitated and annoyed. (*Id.* at 18–19.) According to defendants, plaintiff raised his fists and turned towards Reynoso as if "to strike one of the officers." (*Id.* at 9.) Furthermore, correctional officers on the scene did not report observing plaintiff lose consciousness. (*Id.* at 19.) The facts as pled by defendants constitute the type of "good-faith efforts" to maintain prison order that do not

give rise to an Eighth Amendment violation. *Hudson*, 503 U.S. at 6–7.

The Court is consequently presented with two diametrically opposed sets of facts, the differences between which directly relate to whether the force used against plaintiff was a constitutional violation. Plaintiff has shown a triable issue of material fact as to his Eighth Amendment claims against Reynoso and Tapia. To this extent, defendants' motion for summary judgment is DENIED.

### 2. Observing Officers

Plaintiff claims that correctional officers Colburn, Lizarraga, Sanchez, Woolf, and Xiong who observed the events, are liable for failing to intervene. Yet, the extent of their involvement in the alleged assault is not entirely clear from the facts provided by plaintiff.

A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or fails to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988). While it is well-established that prison guards have a legal duty to protect prisoners from violence at the hands of other prisoners, *Farmer,* 511 U.S. at 832, the duty a guard may owe to protect a prisoner from another guard is less clear. If such a duty exists, it falls within the category of deliberate indifference. To establish deliberate indifference, an Eighth Amendment claim must demonstrate more than a defendant's presence or observation of excessive force, to wit, there must have existed a reasonable opportunity to intervene. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000).

Plaintiff's claim does not state the duration of the alleged assault, its distance from any observing correctional officers, and consequently, whether Colburn, Lizarraga, Sanchez, Woolf, or Xiong could have intervened to prevent the use of excessive force. More precisely, he states that there were four observing officers but does not specifically state their names or where they were located in relation to the altercation. (Compl. at 5.) Plaintiff asserts that the assault lasted until Monroy arrived at the scene, but does not provide any

indication of how much time passed until Monroy arrived. (*Id.* at 6.) Plaintiff states that he was kicked by these "observing officers" while Reynoso and Tapia held him down and applied mechanical restraints. (*Id.*) However, plaintiff does not identify which defendants were responsible for inflicting these kicks. Even assuming that Colburn, Lizarraga, Sanchez, Woolf and Xiong's were in the general vicinity of the incident, the record contains insufficient facts to conclude that they had an opportunity to prevent the use of excessive force against plaintiff.

The factual omissions in plaintiff's claim fail to contradict the defendants' assertion that Colburn, Lizarraga, Sanchez, Woolf and Xiong were "not physically located in an area where they could have seen or intervened" to prevent the use of excessive force. (MSJ at 20.) As plaintiff has not demonstrated a triable issue of material fact, defendants' summary judgment motion is GRANTED in favor of Colburn, Lizarraga, Sanchez, Woolf, and Xiong.

### 3. Supervisors

Plaintiff also names Ponder, Hedgpeth, Monroy, and Fritz as defendants in his Eighth Amendment claim by virtue of their supervisory roles at SVSP. However, plaintiff's facts do little more than list these defendants' job duties at SVSP. Such facts are not sufficient to establish a question of fact as to supervisorial liability under the Eighth Amendment.

Courts must accord prison administrators wide-ranging deference in the adoption and execution of polices and practices to further institutional order and security. *Jeffers*, 267 F.3d at 917 (rejecting Eighth Amendment claim against director of state prison system and prison warden for insufficient storage of non-lethal weapons, and inadequate emergency plans). To be liable under the Eighth Amendment for the use of force by subordinate prison guards, a supervisor's actions (e.g. substandard training, supervision, policy creation) must have resulted from malice, sadism or an intent to cause the inmate harm. *See id.* (no showing of requisite malice, sadism or intent to harm by director of state prison system who was not present at prison riot and warden who simply failed to take immediate command of the prison).

Plaintiff states that Ponder "enforced the charges of Battery on a Peace Officer in the intake Institutional Classification Committee while plaintiff waited for District Attorney prosecution." (Compl. at 8.) Furthermore, plaintiff alleges that Ponder "threatened" plaintiff during a disciplinary hearing by saying, "Your gonna do every bit of that [nine] month SHU-term for assaulting my officers." *Id.* The conclusions that Ponder was motivated by malicious intent or that his words even constituted a threat are not supported by the facts. At the time of the incident, Ponder was the chairperson on the Administrative Segregation Review Committee (the committee), which oversaw the hearing referred to by plaintiff. The purpose of the committee hearing was to determine if plaintiff should be kept in administrative segregation pending the completion of the rules-violation process. The final determination of plaintiff's guilt as to "Willfully Resisting a Peace Officer" was conducted at a disciplinary hearing by Senior Hearing Officer G.R. Salazar. (MSJ, Garske Decl. at 6.) Ponder's "threat" that plaintiff would be subject to penalties for the altercation is not sadistic or overtly malicious on its face. There is no indication that plaintiff was threatened with penalties not consistent with "Battery on a Peace Officer," the offense for which he was originally charged.

The closest plaintiff comes to articulating a claim against Hedgpeth is the conclusory statement that he is "legally responsible for the operation of [SVSP] and for the welfare of all the inmates of [the] prison" and that "malfeasance was institutionalized." (Compl. at 1, 8.) Plaintiff does not provide examples of any other incidents in which this "malfeasance" has been manifested or how it was "institutionalized" by policies implemented by Hedgpeth.

As to Monroy, plaintiff alleges that he instructed "staff to narrate the[ir] statement in the same manner as a 'Battery on a Peace Officer,'" so that plaintiff could be placed in administrative segregation. *Id* at 8. Plaintiff must do more than merely allude to an improper motive to survive summary judgment. He must "'put forward specific, nonconclusory factual allegations' that establish improper motive." *Jeffers*, 267 F.3d at 907 (quoting *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998)). The fact that Monroy may have reviewed

the officers' stories for consistency does not establish that he was motivated by an attempt to cover up the use of excessive force against plaintiff.

Finally, plaintiff states that Fritz took his video-recorded statement in which he recounted his version of the events. Plaintiff has not alleged or shown how such conduct violated his constitutional rights.

In sum, plaintiff's conclusions that these supervisors were motivated by a malicious intent to inflict cruel and unusual punishment are not supported by any facts. Plaintiff's version of events in no respect contradicts defendants' assertions that these officers were without responsibility for implementation or enforcement of policies that violated his constitutional rights. (MSJ at 16.) As no triable issue of material fact exists, defendants' motion for summary judgment is GRANTED in favor of Ponder, Hedgpeth, Monroy, and Fritz.

### III. Due Process

Plaintiff claims his right to due process was violated when Smith, the Inmate Appeals Coordinator at SVSP, delayed the appeal of plaintiff's "inmate grievance." (Compl. at 2, 10.) Defendants contend that they are entitled to summary judgment on this claim because due process does not entitle plaintiff to a prison grievance process, and, even if it did, his complaint was in fact processed in accordance with procedural standards. (MSJ at 12.)

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995). Interests that are procedurally protected by the Due Process Clause may arise from two sources — the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223–27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are

authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). A state may not impose such changes without complying with minimum requirements of procedural due process. *See id.* at 484.

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *Id.* at 477–87. Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

Whether a restraint is "atypical and significant" under *Sandin* requires a case by case consideration. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Typically, a court should consider the following factors: "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.* at 861.

The appeal process did not present an "atypical and significant hardship" on him. First, plaintiff admits that his grievance was processed. His claim was first denied by the Victim Compensation and Government Claims Board on March 17, 2011. (Compl. at 24.) Later his appeal within the Department of Corrections and Rehabilitation's Inmate Appeals Branch was denied in a Director Level Appeal Decision dated May 31, 2011. (MSJ, Garske Decl., Ex. I.)

Second, as regards any delay, plaintiff does not indicate how the alleged delay or how the appeal process itself affected the conditions of his confinement. For example, plaintiff

hypothetically could have implicated his due process rights by alleging that (1) his placement in administrative segregation was a result of the alleged delay and (2) the conditions therein were atypical. Plaintiff does neither here.

Plaintiff's facts do not demonstrate a connection between the alleged delay in his inmate grievance appeal and any conditions of confinement that would constitute an "atypical or significant" restraint outside of SVSP's discretionary authority. *Ramirez,* 334 F.3d at 861. As such, defendants' motion for summary judgment with respect to plaintiff's due process claim is GRANTED.

## IV. Qualified Immunity

Defendants contend that they are entitled to qualified immunity because their conduct did not violate a clearly established statutory or constitutional right. (MSJ at 21.) The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 235–236 (2009). To determine if the plaintiff has alleged the deprivation of an actual constitutional right, a court must decide whether the facts, taken in the light most favorable to the party asserting a constitutional violation, show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2000). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201.

For the reasons discussed above, plaintiff has presented evidence that defendants Reynoso and Tapia inflicted cruel and unusual punishment in violation of his Eighth Amendment rights. Reynoso and Tapia are therefore not entitled to qualified immunity.

However, plaintiff presents insufficient evidence to establish that the other named defendants violated any of his constitutional rights. Therefore defendants Colburn, Fritz, Hedgpeth, Lizarraga, Monroy, Ponder, Sanchez, Smith, Woolf, and Xiong are entitled to qualified immunity.

## CONCLUSION

Defendants' motion for summary judgment (Docket No. 44) is GRANTED in favor of defendants Colburn, Fritz, Lizarraga, Monroy, Sanchez, Woolf, Ponder, Hedgpeth, Monroy, Fritz, Xiong, and Smith. The motion is DENIED as to defendants Reynoso and Tapia. Judgment will be entered accordingly when the action terminates.

This action, which now consists entirely of plaintiff's Eighth Amendment claims against Reynoso and Tapia, is hereby REFERRED to Magistrate Judge Nandor Vadas for purposes of mediation and settlement pursuant to the Pro Se Prisoner Mediation Program. The proceedings will consist of one or more conferences as determined by the mediator. They shall take place within 180 days of the date this order is filed. Judge Vadas shall coordinate a time and date for the conferences with all interested parties and/or their representatives and, within 180 days after the conclusion of the mediation, file a report regarding the prisoner mediation proceedings. **Plaintiff must attend all conferences scheduled by Judge Vadas. Failure to attend even one conference may result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.** The Clerk shall forward a copy of this order to Judge Vadas's chambers, and terminate Docket No. 44.

**IT IS SO ORDERED**.

DATED: November 1, 2012

RICHARD SEEBORG
United States District Judge